Our last case of the day, our fifth case of the day, is People v. Collins, No. 127-584, Agenda No. 5. Counsel for the Appellant, you may begin. Good afternoon. May it please the Court, Counsel, I'm Assistant Attorney General Erin O'Connell on behalf of the People. This case presents a sort of overarching question of first impression as to how courts should analyze the admissibility of body camera evidence. I think based on the briefing that the parties are largely in agreement on how this should go, under the Body Camera Act, generally these are admissible video and audio components where relevant. The principles of evidence, nevertheless, might bar certain portions of the video. And the appropriate analysis at that point is to look at maybe individual statements on the recording to see if those are barred as hearsay or if there are other evidentiary principles that might come into play. So based on that, to some extent, the appellate court erred in its reasoning to the extent it suggested that because there was hearsay on this recording, it was generally inadmissible. That was error. But for the most part, we have most of the video and, I mean, all the video and most of the audio were properly admitted. And then the question is to go through sort of statement by statement. Could this constitute hearsay or not constitute hearsay? And then would that hearsay be barred? When it's drilled down, I think there are actually only a couple of limited statements on this particular recording that are at issue. There is a large number of statements that constitute commands that are non-hearsay commands. There are a couple statements on the recording where the officer is kind of reporting to other officers that he has seen the defendant discard a firearm. It's a black firearm. He gives the location. Those are factual assertions that are potentially subject to the rule against hearsay. But those are the only ones. So you are admitting that these are hearsay and that just under those rules, they should not have been admitted. Is that your point? I wouldn't go that far. I think those are the ones that are arguably hearsay and that need to be closely examined because they are factual assertions. So then the question is, were they used for a hearsay purpose? Or if they were, were they admissible under a hearsay exception? I'm back to Evidence 101. What do you mean hearsay purpose? Are they out-of-court statements admitted to prove the matter asserted? Correct. So the first part of the dispute is, was it admitted for the matters asserted? So there's a disagreement there as to whether any of the statements. Correct. So the statements that are at issue were admitted for a non-hearsay purpose, so therefore didn't constitute hearsay because they were used to show the course of the investigation. As discussed, the remainder of the video and the audio were admissible. So the question is, were those properly admitted to show the context in which the other statements were made? And that seems to be an appropriate purpose for the course of the investigation exception. None of the usual concerns that would come into bar evidence to come in for the non-hearsay purpose are implicated here. It wasn't evidence that was not otherwise admissible. We actually had the officer testify to all of the statements and events on the recording. So this was not new information that was getting in front of the jury through this course of investigation exception. Is it cumulative? It is cumulative. So it was, I would argue, harmless because the officer did testify to all these facts. The video was helpful to the jury, I think, to see the investigation as it sort of unfolded. So generally speaking, I think that the overall recording was properly admitted and helpful evidence to the jury. It is true, though, that it was duplicative of the officer's live testimony in most respects. All right. Back to evidence 101. Is this admitted as a prior consistent statement? No. That would – it was not admitted as a consistent statement. And I think a different analysis would sort of come into play there. This would – Why is it not being admitted as a consistent statement? So the people didn't offer it for that purpose. The people did advance that this was to show the investigation as it was taking place. And then I would also sort of, to get to my second point, they had also argued that this was admissible as a hearsay exception. So for the truth of the matter, being asserted that he had discarded the handgun, it was nevertheless admissible, used substantively, because it qualified as an excited utterance. So have you abandoned the position you originally took in your PLA? Yes. You had. So can this court consider it? Because we granted the PLA based on the argument you made in the PLA. Now you've changed. And I think it's helpful to clarify. So there were very broad positions, I think, taken in the PLA that we are not advancing here, that this was admissible without regard to sort of evidentiary limitations. So with respect to that argument, we're not pressing that here. We did argue, in addition, that this was not barred as hearsay evidence. We're certainly making that argument here. We also had an argument that this was harmless error in its admission, and that is also an alternative basis for reversing the appellate court. Even if this court agrees that it was erroneous to come in, because it was duplicative of the officer's live testimony, it was harmless error in that respect. The argument in the PLA, as you indicated, was first that the Body Cam React makes these recordings automatically admissible. You're abandoning that. You also argued, or the State argued in the PLA, that the recorded conversations were not hearsay because they were recordings. You're abandoning that. So, yes. I think that the basis that they were recordings, I mean, that isn't correct. Correct. That's not a correct proposition. Correct. So what we're left with is you're arguing now course of investigation and excited utterances.  Correct. And the harmless error also comes in. Well, the harmless error. Let's talk about those other two first. The appellate court found that the second issue was abandoned, and neither was raised by it. I mean, it's arguable that neither was raised in the PLA. If we were to find that these two arguments were forfeited, then why was this appeal not improvidently granted based upon your concessions of the arguments in your PLA don't hold water? I would still argue that we have a basis for this Court to reverse. So the harmless error argument was presented in the PLA, and I think it is a basis to reverse the appellate court. I do – I certainly agree that the positions have shifted a bit, and I think this has been a developing area of the law. But Your Honor is correct that the argument that just because these were recorded these were admissible is just not supported by the law. So we're not pressing that argument here. But there are arguments to be made that this was properly admitted, nevertheless, that the circuit court did not err, and its judgment should not have been reversed because this was all properly admitted as part of this recording to show the course of investigation. And then, of course, I would urge the Court to consider the harmless error argument as well, because that was in the PLA. But, yes. The course of investigation, you're really stretching that, aren't you? I mean, this is an expansion of the common understanding of the course of investigation exception. It's a novel context. Right, right. Sort of a novel approach to this. And it's an expanded view of the course of investigation exception. I think it's a natural application of the principle that certain evidence can come in to show the course of the investigation. This is sort of an atypical situation because usually we didn't have the recordings to be admitted at trial as well. So how that doctrine applies to the recording is, I think, a novel question. But what I think is important here, and I think that there would be some questions raised if this was not also being addressed in live testimony. So in Jura was the main case below that they relied on. It was a third-party statement that was highly incriminating. So that statement was only introduced through the course of investigation. And the court said, basically, you can't skirt the rules of evidence and get in this prejudicial evidence this way. Those concerns aren't implicated here where we don't have that sort of third-party information, and it's merely duplicative of the officer's testimony. It concerns me. It seems to me that you're really expanding a lot the course of investigation. I mean, the principle you're advancing appears to swallow up the hearsay rule. So there would always be this exception, you know, like in a police investigation. Oh, this is a course of investigation, so it comes in. It seems to be a major expansion of that. So when would you use hearsay if that exception is out there during a police investigation? But there's all kinds of things in the course of a police investigation. So it generally has to be important to the jury's understanding and necessary for them to sort of understand the evidence in the case. Courts should definitely be careful, I think, in applying the course of the investigation principle. So definitely should take a close look. And that's what Jura was getting at, is that this isn't a wholesale exception where you can just introduce anything you want. And so it's really a fact-specific argument that here those statements were providing important context in the course of the investigation information for the jury. That's the reason I think it's a big expansion. Like, any hearsay statement could be arguably helpful to the jury to understand the context of what's going on. I mean, you could always argue that what's helpful to the jury is what's coming in in the course of the investigation. It would swallow up traditional rules of hearsay, you know, that we have. I mean, that's what's bothering me in this case. And you recognize it. You're urging an expansion of the concept, aren't you? So definitely I would agree that none of the cases deal with this sort of context, so it's more the principle behind it. And I do agree that a court does need to be careful in applying it to ensure that it's not uncross-examined, incriminating evidence that is coming in that would otherwise be subject to the hearsay bar. So counsel, in terms of being careful, was there a limiting instruction given here? There was no limiting instruction requested here, and that's another usual safeguard that would be in place where there's a course of investigation testimony where that's being introduced, there would be a limiting instruction. The way that this came in, nobody requested the instruction in this case. So, unfortunately, on these facts, we don't have that limiting instruction, that extra sort of guardrail there. But I would, again, kind of circle back to the harmless error argument here, which is that the testimony that the state relied on was live testimony from the officer. And this was additional testimony that corroborated that, but it didn't add to it, it didn't provide new evidence and new facts that was potentially prejudicial that the court should usually examine under a course of the investigation exception. But it is very powerful because it's a consistent position from the other testimony that came in from the officer. So this increases what the confidence of the officer's testimony could have on these other statements that confirm what the officer said. So there were, I think the main portions that the state was relying on to corroborate was the perspective of how the investigation unfolded after this happened and his immediate reaction after arresting the defendant and then running and finding the gun and how that corroborated that he had just seen the gun discarded. There are circumstances where it would be corroborating of the testimony itself, but the state didn't rely on that in particular here. So I do agree that it's a sort of expansion or new application of the course of investigation exception. There is an alternative argument that was a little bit more developed in the trial court as well, which was the excited utterance exception. And in that case, it would come in regardless for substantive use as well that the statement was given under exciting circumstances. He was in the middle of the foot chase and then searching for the gun that was still on the loose at the time. Isn't that an expansion of the excited utterance? I think it's fair. I think that the exception does apply to police officers, and I know that the argument against it is that he had training as a police officer. But it's not precluded in its application to police officers, and it would be warranted here because these were so closely linked to the facts of the investigation as they were. But it appears to me that there would be an expansion of our concept of excited utterance. I don't. To say the police officer had an excited utterance because of a foot chase. I don't think this court in particular has applied excited utterance to police officers, but the appellate court has certainly done that. So it just hasn't presented that particular issue to this court, but it wouldn't be a vast expansion of Illinois jurisprudence on excited utterance. It's been applied before to police officers. I'm not saying police officers are excluded, but I'm talking about in the facts of this case, it seems to be a request for an expansion of our excited utterance position. In terms of it being a close case and application of the excited utterance, I mean. On this particular case, it seems to be an expansion of my common understanding of excited utterance. And I think it's fair to assess whether the State satisfies all the criteria in terms of the level of excitement. It has to be sufficiently startling to the witness. It has to be temporally linked. Those criteria are well established. Those are satisfied here. And the court can review the recording as well to sort of see it play out in the tone of voice. That also supports that he was acting under an excited state and in the moment at the time. So the court can look at that and should look at the recording in assessing whether those criteria are met for the excited utterance. I'm just thinking if we apply this principle, then every police investigation, I mean, where they're like running after somebody or something like that, there would always be an excited utterance exception for the police officer's statements. Because it was in the chase and it was in the moment, it was all exciting. Again, I would agree that the court should look at these skeptically and assess whether it actually satisfies all the criteria for the rule. It is a limited rule. It does have to meet these criteria of level of excitement and temporal proximity. So, yes, the court does have to ask those questions, I think. And it's not a rote application and it wouldn't be in every case. But the question is whether this officer in these circumstances was sufficiently excited. And I think the recording supports that interpretation of the record. There was an alternative, wasn't there? I mean, I don't know. Technology is my question, I guess. Could they have just played the video without the audio? So this is, it is my understanding, correct. I would urge against just doing a silent video because I think there were certainly audio aspects that were plainly admissible. So in terms of, and I wasn't, I'm not technologically advanced myself, but I believe it's possible to redact portions of an audio recording. So that's sort of how I see it playing out is that certain statements would be redacted, but it would play the video and then most of the audio as well. But doesn't the dissent, Justice Coughlin, find that the reading is contrary to what the legislative intent was, requiring audio statements to satisfy the rules against hearsay? You know, it's an impartial evidence and documentation contemplated by the Act. So how do you explain what's happening? So I think the dissenting Justice was right in noting that the intention of the Act was to create this reliable evidence to be admitted at these proceedings. And I think the Court should start from the presumption that this is admissible and should come in. But it does have to apply the rules of evidence then to the entirety of the recording and see whether all of it satisfies the standard for admissibility. So, but it is an important purpose for the Act to provide this evidence generally. But wouldn't that, you know, be contrary to what the Act requires, which is transparency and accountability if you're redacting? Well, that's why I would urge the Court to take a limited approach to redactions because I do think it is important to see all of it contextually. And it can be a little bit difficult to follow if it is a matter of pieces of it being cut out. But that said, there is a way to read the Act consistent with this Court's rules of evidence and just but with the background principle that this is intended to be admissible evidence except where otherwise provided. So I would agree that the dissent does, I think, make an important point that this should be admitted where it can be. And in this case, there was no principle that would clearly bar the portions that were admitted. So the Court didn't abuse its discretion in allowing the jury to hear the entirety of this evidence, this reliable evidence that let, you know, clarified for the jury the circumstances of the investigation. And just as a clarification, you're not arguing, as was mentioned before, of a consistent statement, because 63.3 or C, you're not arguing this comes in as a consistent statement? No. I would agree it doesn't satisfy the criteria for the prior consistent statement. So it is just limited to these arguments here, the course of the investigation rendering it non-hearsay, or if it was used substantively, it would have been an excited utterance. And we have to satisfy those criteria. Thank you very much, ma'am. The time has expired. May it please the Court. My name is Samuel Steinberg, and I represent Apo Lee, Jodan Collins. The State's case hinged on a jury determination of the credibility of Officer Hernandez. With no DNA connecting Hernandez to the gun, no fingerprints, no other officer saw him with the gun. His body camera was not even on. This Court should affirm the appellate court's decision and order a new trial because the State relied upon inadmissible hearsay statements. This is now a question, after the State's concessions, of Evidence 101, Justice Tice. The State has boiled this down to a question of whether it's inadmissible hearsay, and they have presented this case as an issue of first impression. However, this Court has always considered whether an out-of-court statement, whether it's in a police report, on a recording, is hearsay or not. It is not an issue of first impression. It is simply a rule of evidence. This Court did grant jurisdiction based on the State's PLA under Rule 315. Under that rule, it's usually reserved for questions of great confusion or conflict. There's no conflict if the rules of evidence apply. The State's cases, which some of them have even barred defendant statements, they even will argue that the rules of evidence apply to recorded body camera statements. This Court, Justice Burke, I believe you asked about impoverishly granted. That's a question of this Court's discretion. And my client has been, this case has been going on a long time, petitions for rehearing, the State has not raised its excited utterance when the State asked for a petition for rehearing in the appellate court or on the PLA or they have numerous opportunities. They were provided notice, such as in Cotter, which is cited by the State's case of Brown. And they chose not to until it got to this Court. And now it asserts that they're not hearsay. But all these statements, and I'm going to quote a line from page 6 of the reply brief. These statements communicated that the defendant dropped a gun, possessed a gun, and dropped it in a specific lot, and he also ordered his Lopez to go find the gun. They all commuted an assertion of truth. They were all out-of-court statements used for the truth of the matter asserted. They asserted my client dropped a gun in a lot, and with my client right next to him. And here are some of the six statements that I point out in the brief. Joe, go back to the lot. Go back to the lot where we ran through, i.e., he's implying that Jordan Collins and him ran through a specific lot. The one is, I got him detained. Go back to the lot. Similar statement. Go back to the lot there. He dropped it there. Later, as the State pointed out on page 263 of its closing argument, this officer even reflected and corrected squad when they asked what type of gun. He said, it's a pistol squad. He dropped a pistol right there. And he even said, it's a black gun. It's in the middle of the lot. It's a black gun. So not only is the officer, this would be an expansion of the excited utterance exception because under LRMA, it has to be a spontaneous and non-reflective statement relating to a startling event. And this officer did not have his body camera on at the beginning. He said he hesitated and slowed down. The body cameras traditionally have a 30-second delay recording. We don't see him do it. And when the officer starts making the statement, it's 50 seconds into the video. And, in fact, Collins is arrested, his hands up, he's squatting down, very calm and controlled. Yes, he's out of breath. He's gone for a run or a jog. I'm not trying to be sarcastic here. But he's making comments to facilitate a criminal investigation. These are not non-reflective statements of a normal officer. In the 1990 case of Smith, this court, that involved prison reports but interpreted the federal rule of evidence, 8038, regarding the ban on public records using criminal cases. And this court said that, you know, those out-of-court statements by officers questions the motivation, recall, and soundness of their opinions. It's an adversarial counter. Illinois has adopted that. It has banned the state from introducing such statements. Counsel, are there any statements on the video that you would agree would be admissible or should, you know, if we affirm this case goes back for a new trial, what's your position on video with no audio or limited audio as suggested by the opposing counsel? I want to clarify the video. The state makes a lot of video for Justice Overstreet. The video is not made by a declarant. So technically the video, since it is relevant evidence, is admissible. The statements, most of them are not, even if the state characterizes them as commands. The state relies on cases such as Price, Salisbury, and Sorrells to say, oh, these are just normal commands. But those cases stress that they're only allowed when they don't contain an assertion of truth. And those cases involve simple commands like stop, hello, or shake someone's hand, or delete this. They were very general assertions. They weren't specifically stating that a criminal defendant dropped a gun, illegally possessed a gun, and a lot. And, in fact, if the state is going to rely on Price and Sorrells, the Maryland court, which they rely on, says when an out-of-court assertion of fact may be true or untrue. For that reason, its admissibility on evidence is problematic when offered to prove the truth of the matter asserted. And these weren't used to show course of the investigation. Pages 261 through 265 of the record, the state never asserted that. The state might assert that, oh, there was no limited instruction that defense might should have requested. But the state, in that case, the Cook County State's Attorney's Office, had an obligation to notify the defense of a limited purpose. And the state's argument here that they were used for a limited purpose, well, let's go to the closing arguments. I apologize for quoting the closing arguments at length in my brief. But the state relied upon them. For example, page 262 to 263. It makes you ask the question, if he didn't see the gun, how is he able to describe it so accurately to his partners? When he gets to his location, what does he recover? A black pistol sitting right there in a lot. Justice Overstreet, I want to get back to your question about whether it was duplicate evidence. During Officer Hernandez's direct testimony, he testified a little bit that he told Lopez about to go back to the lot. But he didn't say it five or six times. He didn't say emotions. He didn't describe it as a black pistol repeatedly. This went above and beyond. And it didn't include his tone of breath or any of that. The state further relies on that by saying, if he didn't drop the gun, where did he drop it? He accurately, are all these just lucky guesses? Also, 259, kind of the start of the closing argument, the state says, no, the circumstantial evidence. That piece of video shows you everything Officer Hernandez said, everything he did. They used the word said. They direct the jury's attention to the officer's hearsay statements. That's the state relying on it. Moreover, the fact that there's no limited instruction, the jury is specifically standardly instructed to review all live testimony and exhibits. We are presumed that juries follow these instructions, especially when the state further says, oh, listen to his radio calls. He's trying to direct his partners. And then the state points out on the video, replays it, and the audio says, he's describing where he dropped the gun. He's describing. And then they go further, 361, he never equivocates. Officer Hernandez never equivocates exactly what he saw to his partners. He is directing his fellow partners to where he saw the gun. And then, I mean, during rebuttal, the state also misstates the audio as well. The state says, oh, when he says you dropped the gun, you dropped the gun. Jody Collins is not responding. That's the state's entire closing argument. Now, that's troubling because it's a comment on my client's right to silence as well, which has no place in during closing arguments. And a prosecutor's misstating the evidence. This is not an excited utterance. The officer has five years of experience. He was in an area known for drugs and violence. He describes it as an area for drugs and violence. In fact, on page 219 of the record, he's asked, oh, is this a narcotics investigation? Yes. And then he later says, and then they're asked, oh, do narcotics dealers sometimes carry guns? Yes. Drugs and guns kind of go together like peanut butter and jelly. If he was trying to conduct an investigation, he chose to chase after Collins because he expected to find some kind of contraband. And this wasn't an excited utterance exception because officer is calm. He has time to reflect. He even walks Collins throughout the video to the gate and try to lift him over the gate with his fellow officers. Meanwhile, two officers are walking. Lopez's video, which was only used to rebut the state's introduction of it, introduction of the hearsay evidence, showed all officers in this area calmly walking down. Earlier today, this court had a gun case, questions of gun possession. This court will routinely get questions about defendants running from cops and dropping guns. This is everyday police work. Moreover, seeing a gun is just part of that work. In fact, in a case that went against a defendant called Simon, the defendant tried a few seconds after that case, after a fight, to say, oh, I saw a gun in a waistband to support self-defense. And the state banned that statement, and the state successively argued that statement to ban the defendant's hearsay statements. So. Can you address the harmless error argument? Yes. This is a single witness case, no corroboration evidence. The state cites a case such as Norris in their brief. That case involved two officers seeing a defendant in a car. In fact, their body camera was on, I think, almost the entire time of that encounter. Here, Officer Hernandez, I don't really know why, he didn't have his body camera on at the start of the chase. You don't see him really in the lot where the gun is located. You see him, like, almost to Fulton Street at that point. We know that he explained that during his testimony. He's the only witness who could corroborate it. It was dark at night. It's a high-crime area. Collins was also with two other people in the area. And by itself, the testimony that a defendant who's running from the cops would just drop a gun in the middle of the lot, maybe not toss it to the side or try to throw it up on a roof or throw it under a sewer, that's also implausible. We weren't in the jury room to see how they assessed Officer Hernandez's credibility. But we do know that the state emphasized this during closing arguments. They made it a centerpiece of its case. And for those reasons, I ask that this court affirm the appellate court's decision and order a new trial. There are no further questions. Thank you. Just to briefly address whether this case warrants review, I do disagree. I think this case presents an important opportunity to explain to lower courts how to process these types of claims. And the issue of harmless error is not just presented on the facts of this case. It's actually an issue on which there's a conflict in the courts of appeals. Our reply brief at 13 points out other cases that have come out the opposite way. This court should find, contrary to the appellate court here, that where there is information on a body camera recording that is just entirely duplicative of an officer's live testimony, the admission of that testimony at trial is harmless error. And although I disagree in calling this a single witness case, there was a partner on the scene. He corroborated the circumstances of the chase. And most importantly, the key element of the testimony here was that defendant had discarded a firearm in a foot chase. There was a firearm that was recovered that was introduced into evidence. So there was physical evidence as well as the officer's testimony that the jury credited. So we would therefore ask that this court provide the guidance to the lower courts on how to resolve these and reverse on, at a minimum, the harmless error question. And just to be clear, because closing argument issues were raised, there are issues that remain to be addressed if this court were to reverse, so it would need to remand to the appellate court to address those additional issues. Kagan. So I'm clear. Your argument is one argument is this is not hearsay because it was not admitted for the truth of the matter asserted. It was admitted to explain the course of the investigation. Correct. You're also arguing that it is hearsay, but there is an exception to the hearsay that it was spontaneous utterance. Correct. And the reason that that alternative argument is in there is I don't think the State used it as substantive evidence, but if the court were to disagree in reviewing the closing arguments, then it would be admissible under this principle of the excited utterance. And you're not arguing that it's been admitted as a consistent statement. Correct. Or I assume you disagree with the fact that it's been admitted for the purpose of bolstering the testimony of the officer. It wasn't used for the purpose of rehabilitating his credibility after he had been effectively cross-examined. I think that's where that line of cases is going with the bolstering concern. We aren't arguing that it satisfies the criteria for the exception for a prior consistent statement. It either is not used as hearsay or if the court disagrees in excited utterance, but I think most importantly the statement here was clearly harmless in light of the live testimony. Thank you. This case, People v. Collins, number 127584. Agenda number five will be taken-